# In the United States District Court
## for the Southern District of Georgia
### Brunswick Division

LAURA B. CROSS-MCKINLEY,

    Plaintiff,

    vs.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
OGLETHORPE BANK,

    Defendant.

\* \* \* \* \* \* \* \* \* \*

CV 211-172

### ORDER

Presently before the Court are cross-motions for Summary Judgment filed by Plaintiff Laura Cross-McKinley and Defendant Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Oglethorpe Bank.  See Dkt. Nos. 19, 20.  Upon due consideration, Plaintiff's Motion for Summary Judgment is **DENIED,** and Defendant's Motion for Summary Judgment is **GRANTED.**

## I.  INTRODUCTION

This action is predicated on an alleged breach of contract. See Dkt. No. 1.  Specifically, Plaintiff filed suit to recover

1

damages in the form of severance pay as a former employee of the now-defunct Oglethorpe Bank ("Bank").  Id.

The material facts are not in dispute.  See Dkt. Nos. 15, 19, 20.  On October 1, 2002, Plaintiff entered into an Employment Agreement with the Bank.  Dkt. No. 15 ¶ 6.  The Employment Agreement provided Plaintiff a severance payment if Plaintiff lost her position within two (2) years of the Bank's Change in Control.[1]  Dkt. No. 1 ¶ 6.  The amount of the payment was to be the greater of two-years' salary or salary for the remainder of her contract.  Id.

From October 1, 2002 until January 14, 2011, Plaintiff was employed as the Bank's President and Chief Executive Officer. Dkt. No. 15 ¶¶ 5, 15-20.  During that time, she neither resigned nor was terminated.  Id. ¶¶ 15-20.  Plaintiff was fully vested in all rights and benefits under the terms of her Employment Agreement with the Bank.  Id. ¶ 14.  During this time, neither the Bank nor Plaintiff sought approval from the FDIC or any other federal banking agency to make any payment of severance

---

[1] The phrase "Change in Control" is defined by the Employment Agreement.  Dkt. No. 15-3.

2

benefits to Plaintiff pursuant to the Employment Agreement.  Id.
¶ 9.

On January 14, 2011, the Georgia Department of Banking and
Finance closed the Bank and appointed Defendant as its Receiver.
Id. ¶ 2.  That same day, Defendant entered into a Purchase and
Assumption Agreement with the Bank of the Ozarks.  Id. ¶ 4.
Also on that same day, Plaintiff executed a new employment
agreement with Bank of the Ozarks.  Dkt. No. 1 ¶ 7.  She worked
approximately two (2) hours.  Thereafter, Bank of the Ozarks
terminated Plaintiff's employment.  Id.

Pursuant to 12 U.S.C. § 1821(e), Defendant timely
repudiated Plaintiff's Employment Agreement and advised
Plaintiff of her right to file a claim against the receivership
estate.  Dkt. No. 15 ¶ 10.  Plaintiff timely filed a proof of
claim form with Defendant.  Id. ¶ 11.  On September 2, 2011,
Defendant disallowed the claim.  Id. ¶ 12.  Pursuant to 12
U.S.C. § 1821(d)(6)(A), Plaintiff commenced this action.  Dkt.
No. 1 ¶ 2.

After stipulating to the material facts (Dkt. No. 15), the
parties filed cross-motions for summary judgment.  Dkt. Nos. 19,
20.  These motions are fully briefed.  See Dkt. Nos. 19, 20-2,
23, 30, 38, 42.  The Court heard oral argument regarding the

AO 72A
(Rev. 8/82)

motions on December 18, 2012. The parties ask this Court to determine whether, as a matter of law, Plaintiff is entitled to damages resulting from Defendant's repudiation of the Employment Agreement.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

4

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984). The court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. Am. Bankers Ins. Grp., 408 F.3d at 1331.

AO 72A
(Rev. 8/82)

## III. DISCUSSION

The parties agree that Defendant had authority to repudiate the Employment Agreement. The parties further agree that Defendant repudiated the Agreement. The parties disagree, however, as to Defendant's liability for damages resulting from that repudiation.

A. Legal Standard

12 U.S.C. § 1821 governs, among other matters, the powers of the FDIC as receiver. Subsection 1821(e)(1) delineates the FDIC's rights and obligations with respect to contracts entered into by a failed bank before the FDIC's appointment as receiver. McCarron v. FDIC, 111 F.3d 1089, 1093 (3d Cir. 1997). Specifically, within a reasonable time after being appointed receiver, the FDIC can "disaffirm or repudiate any contract that the bank may have made before receivership if the FDIC decides 'in its discretion' that performance will be 'burdensome' and that disavowal will 'promote the orderly administration' of the failed bank's affairs." Howell v. FDIC, 986 F.2d 569, 571 (1st Cir. 1993) (citing 12 U.S.C. § 1821(e)(1)); 12 U.S.C. § 1821(e)(2). See also McMillian v. FDIC, 81 F.3d 1041, 1045 (11th Cir. 1996).

6

By repudiating the contract, the receiver is freed from having to comply with the contract. Howell, 986 F.2d at 571 (citation omitted). However, the repudiation is a "breach of contract that gives rise to an ordinary contract claim for damages, if any." Id.; see also McCarron, 111 F.3d at 1095.

Congress limited the damages permitted for these types of repudiated contracts. See 12 U.S.C. § 1821(e). Damages are measured by 12 U.S.C. § 1821(e)(3)(A). That subsection provides, in relevant part: "[T]he liability of the . . . receiver for the disaffirmance or repudiation of any contract pursuant to [§ 1821(e)(1)] shall be . . . limited to actual direct compensatory damages . . . ." § 1821(e)(3)(A). "'[A]ctual direct compensatory damages' do[] not include— (i) punitive or exemplary damages; (ii) damages for lost profits or opportunity; or (iii) damages for pain and suffering." § 1821(e)(3)(B).

B. Application

The parties correctly agree that resolution of this case requires statutory interpretation, which is a question of law. See Dionne v. Floormasters Enters., Inc., 667 F.3d 1199, 1203 (11th Cir. 2012) ("[I]nterpretation of a statute is a question

of law . . . ." (citing <u>Corp. Mgmt. Advisors, Inc. v. Artjen</u> <u>Complexus, Inc.</u>, 561 F.3d 1294, 1296 (11th Cir. 2009))).

However, the parties disagree as to the statute's meaning. Specifically, the parties dispute whether Plaintiff is entitled to damages resulting from Defendant's repudiation of the Employment Agreement.[2] For the reasons stated below, Defendant is entitled to summary judgment as a matter of law.

1.  Golden Parachute Payment

The parties dispute whether the payment sought is a golden parachute payment. It is.

a. Golden Parachute Payment Defined

The FDIC "may prohibit or limit, by regulation or order, any golden parachute payment." 12 U.S.C. § 1828(k)(1). A "golden parachute payment" is

> any payment (or any agreement to make any
> payment) in the nature of compensation by
> any insured depository institution . . . for
> the benefit of any institution-affiliated
> party pursuant to an obligation of such

---

[2] Both parties proffer alternative grounds in support of their motions. Because Defendant is entitled to summary judgment pursuant to 12 U.S.C. §§ 1821, 1828 and 12 C.F.R. § 359.7, the Court does not reach the parties' other arguments.

institution . . . that—(i) is contingent on the termination of such party's affiliation with the institution . . . and—(ii) is received on or after the date on which—

(I)     the insured depository institution . . . is insolvent;
(II)    any . . . receiver is appointed for such institution; [or]
(III)   the institution's appropriate Federal banking agency determines that the insured depository institution is in a troubled condition . . . .

§ 1828(k)(4)(A) (alternatives IV and V omitted).  A "golden parachute payment" is not

(i)     any payment made pursuant to a [qualified] retirement plan . . . or other nondiscriminatory benefit plan; [or]
(ii)    any payment made pursuant to a bona fide deferred compensation plan or arrangement which the Board determines, by regulation or order, to be permissible . . . .

§ 1828(k)(4)(C) (alternative iii omitted).

Plaintiff's Employment Agreement—if fulfilled—meets the statutory definition of a golden parachute payment. Specifically, it is (1) an agreement to make a payment (2) in the nature of compensation (3) by a federally insured bank

9

(4) for the benefit of an institution-affiliated party ("IAP")[3] (5) that was contingent on the termination of the IAP's affiliation with the bank and (6) will be received, if at all, after the date on which the FDIC was appointed as the bank's receiver.[4] See § 1828(k)(4)(A). Because Plaintiff seeks a golden parachute payment, the FDIC can forbid it. See § 1828(k)(1).

Plaintiff argues that her Employment Agreement is not a golden parachute payment. Dkt. No. 30, at 6; see also 12 C.F.R. § 359.1(f)(2) (noting that the "term golden parachute payment" excludes certain payments). Specifically, Plaintiff asserts that the payment she seeks is an exception to the standard definition of a "golden parachute payment" because it is one that the FDIC "determine[d] to be permissible in accordance with § 359.4." Dkt. No. 30, at 6 (citing 12 C.F.R. § 359.1(f)(2)(vii)). In particular, Plaintiff asserts that her Employment Agreement is permitted under 12 C.F.R. § 359.4(a). Dkt. No. 30, at 6. That rule states, in relevant part:

---

[3] Plaintiff was an IAP because she was a director and officer of the Bank. See 12 U.S.C. § 1813(u)(1) ("Institution-affiliated party means—(1) any director, officer, [or] employee, . . . of, or agent for, an insured depository institution . . . ." ).
[4] Subparts I and III to 12 U.S.C. § 1828(k)(4)(A) also apply. However, for simplicity, the Court relies on subpart II.

10

> An insured depository institution . . . may
> agree to make or may make a golden parachute
> payment if and to the extent that: [t]he
> appropriate federal banking agency, with the
> written concurrence of the [FDIC],
> determines that such a payment or agreement
> is permissible . . . .

12 C.F.R. § 359.4(a)(1).

As noted below, however, the FDIC did not approve Plaintiff's Employment Agreement. See infra Part III.B.1.b.; see also infra Part III.B.1.c. Consequently, 12 C.F.R. § 359.4(a)(1) and 12 C.F.R. § 359.1(f)(2) do not remove Plaintiff's Employment Agreement from the golden parachute statutes and regulations. As such, Plaintiff's Employment Agreement—if fulfilled—meets the statutory definition of a golden parachute payment.

b. Approval of Golden Parachute Employment Agreement

On November 26, 2002, the FDIC approved Oglethorpe Bank's application for Federal deposit insurance. See Dkt. No. 30-2. Plaintiff asserts that, by approving the Bank's application for deposit insurance, the FDIC simultaneously approved the severance provision in her Employment Agreement. Dkt. No. 30, at 4-5. However, this view wrongly conflates two (2) things: (1) the FDIC's investigation of the Bank's financial strength

11

for the purposes of determining whether to insure the Bank and (2) regulatory review and approval of the "golden parachute" provision in Plaintiff's Employment Agreement.

The document upon which Plaintiff relies is an FDIC form entitled "Summary of Investigation Proposed New Bank." The FDIC uses this form to "examine[] factors including the financial history of the bank [and] the adequacy of the bank's capital structure[] and future earnings prospects." Dkt. No. 30, at 4. The FDIC "determines whether to provide Federal deposit insurance" based on the findings presented in this form. Id.

In the portion of the form titled "General Character of Management," the FDIC identifies the various board members of the proposed Bank. See Dkt. No. 30-2, at 5-7. The FDIC describes the residence, age, education, and experience of these people. Id. The FDIC also describes the community's opinion of the proposed management team members. As relates to Plaintiff, the FDIC states that Plaintiff's "employment contract calls for an annual salary of $130,000 and provides for an initial five-year term with a three-year renewal clause. She will also receive stock options and a two-year severance package (with a non-compete agreement)." Id. at 6. At the end of the "General Character of Management" section of the form, the FDIC states,

AO 72A
(Rev. 8/82)

"A favorable finding is made on this factor." Id. at 6. At the end of the form, the FDIC states, "In view of the favorable findings on each of the statutory factors, approval of the application for Federal Deposit Insurance, subject to the conditions contained in the attached Order, is warranted." Id. at 8 (emphasis added).

Plaintiff concludes from this form that the FDIC's finding that the "General Character of Management" was "favorable" necessarily means that the terms of Plaintiff's severance agreement were approved. Dkt. No. 30, at 5. However, as noted at the end of the form, the FDIC "approved" the application for Federal Deposit Insurance. See Dkt. No. 30-2, at 8. The FDIC did not state that it "approved" Plaintiff's Employment Agreement. Id. At most, the FDIC found Plaintiff's character "favorable," at least so far as her character related to her proposed service as the Bank's Chief Executive Officer and Director. Reading the "General Character of Management" portion in total, it is clear that, when completing this form, the FDIC was evaluating the professional competence and social sensibilities of the proposed management team. Even viewing this evidence in Plaintiff's favor, there is no indication that the FDIC intended to simultaneously approve Plaintiff's

13

Employment Agreement. Nor is there any indication that the FDIC actually approved the Agreement. Consequently, the FDIC's approval of the Bank's deposit insurance application did not provide simultaneous approval of Plaintiff's Employment Agreement.

c. Application for Golden Parachute Payment

Because Plaintiff seeks a golden parachute payment, the FDIC's consent is required before Plaintiff can be paid.[5] See 12 C.F.R. §§ 359.2, 359.4. "[T]he procedures to file for the FDIC's consent when such consent is necessary under [12 C.F.R. § 359]" are contained in 12 C.F.R. § 303.244. See § 359.6 ("Requests to make . . . golden parachute payments permitted by § 359.4 shall be submitted in writing to the appropriate regional director (DSC). For filing requirements, consult 12 CFR 303.244."). Section 303.244 requires applicants to "submit

_____

[5] 12 C.F.R. § 359.4 provides two (2) other exceptions to the general rule from 12 C.F.R. § 359.2 that FDIC consent is required to receive a golden parachute payment: the White Knight exception and the Change in Control exception. See 12 C.F.R. §§ 359.4(a)(2)-(3). The White Knight exception does not apply because Plaintiff entered into her Employment Agreement at the Bank's inception, not as a result of the Bank's pending insolvency. See § 359.4(a)(2) (referencing 12 C.F.R. § 359.1(f)(1)(ii)). The Change in Control exception does not apply because Plaintiff's Employment Agreement calls for more than twelve (12) months' salary. See Dkt. No. 1 ¶ 6.

14

a letter application to the appropriate FDIC regional director."

12 C.F.R. § 303.244(b). The application must contain

> (1) The reasons why the applicant seeks to make the payment;
> (2) An identification of the institution-affiliated party who will receive the payment;
> (3) A copy of any contract or agreement regarding the subject matter of the filing;
> (4) The cost of the proposed payment and its impact on the institution's capital and earnings;
> (5) The reasons why the consent to the payment should be granted; and
> (6) Certification and documentation as to each of the points cited in § 359.4(a)(4).

12 C.F.R. § 303.244(c).

The FDIC has not consented to Plaintiff's golden parachute payment. Plaintiff directed the Court to the FDIC's approval of the Bank's deposit insurance application. As a preliminary matter, that form was generated by the FDIC. See Dkt. No. 30-2. Thus, that form cannot be the "application" that Plaintiff was required to submit pursuant to 12 C.F.R. § 303.244. Without any evidence that Plaintiff even applied for FDIC approval of her golden parachute payment, the Court cannot draw the inference that the FDIC approved such a payment.

Moreover, even if the Banks' application for deposit insurance was a simultaneous application for approval of

15

Plaintiff's severance benefits, that application was incomplete. That is, the application did not include the content required by 12 C.F.R. § 303.244. See Dkt. No. 38, at 5. Notably, there is no evidence that Plaintiff's purported application included the reasons why the Bank sought to make the payment; the cost of the proposed payment and its impact on the Bank's capital and earnings; the reasons why consent to the payment should be granted; or certification and documentation as to Plaintiff's fiduciary and professional conduct as required by § 359.4(a)(4). See 12 C.F.R. § 303.244(c) (listing content required for application for consent of golden parachute payment). Because her purported application for approval of severance benefits was incomplete, the Bank cannot make the golden parachute payment. See id. § 303.244(a)(1).

Other than the FDIC's approval of the Bank's application for deposit insurance, Plaintiff points to no evidence that she sought or obtained approval for the golden parachute provision of her Employment Agreement. Without evidence that Plaintiff sought and obtained approval of her golden parachute payment, the Court cannot approve Plaintiff's request for damages.

16

2. 12 C.F.R. § 359.7

Even assuming that Plaintiff received the FDIC's approval of her Employment Agreement in the form of the agency's approval of the Bank's application for federal deposit insurance, Plaintiff's claim fails as a matter of law. Specifically, 12 C.F.R. § 359.7 forbids the very payment that Plaintiff seeks.

12 U.S.C. § 1828(k)(1) empowers the FDIC to promulgate regulations disallowing or limiting "golden parachute payments." Consistent with its authority, the FDIC promulgated 12 C.F.R. § 359. Subpart 359.7 provides, in relevant part:

> The provisions of this part, or any consent
> or approval granted under the provisions of
> this part by the FDIC (in its corporate
> capacity), shall not in any way bind any
> receiver of a failed insured depository
> institution. Any consent or approval
> granted under the provisions of this part by
> the FDIC or any other federal banking agency
> shall not in any way obligate such agency or
> receiver to pay any claim or obligation
> pursuant to any golden parachute, severance,
> indemnification or other agreement. Claims
> for employee welfare benefits or other
> benefits which are contingent, even if
> otherwise vested, when the FDIC is appointed
> as receiver for any depository institution,
> including any contingency for termination of
> employment, are not provable claims or
> actual, direct compensatory damage claims
> against such receiver.

17

This regulation is fatal to Plaintiff's claim.  It says, in relevant part, "Any consent or approval granted under the provisions of this part . . . shall not in any way obligate . . . [the] receiver to pay any claim or obligation pursuant to any golden parachute . . . or other agreement."  § 359.7.  The parties agree that Defendant is the failed Bank's receiver.  See Dkt. No. 15 ¶ 2.  They also agree that Plaintiff and the failed Bank agreed to make a severance payment under certain conditions.  See Dkt. Nos. 15 ¶ 3; 15-3.  They further agree that Plaintiff is not entitled to payment unless the contractual provision at issue was approved by the appropriate federal agency at least one (1) time.  See Dkt. Nos. 38, 42.  Thus, even assuming that (1) Plaintiff received the requisite agency approval for her Employment Agreement and (2) the FDIC was otherwise obligated to pay Plaintiff's severance benefit, § 359.7 states that the FDIC, as receiver, is not obligated to make such payment.  This is true even if Plaintiff's severance benefit is not a "golden parachute" payment.  See § 359.7 (noting that the rule applies to "any other agreement").

Subpart 359.7 is fatal to Plaintiff's claim for a second reason.  The regulation says, in relevant part, "Claims for . . . benefits which are contingent, even if otherwise vested, when

AO 72A
(Rev. 8/82)

the FDIC is appointed as receiver . . . are not provable claims or actual, direct compensatory damage . . . ." § 359.7. As noted in Part III.A., supra, the receiver's liability for disaffirming a contract is "limited to actual direct compensatory damages." 12 U.S.C. § 1821(e)(3)(A). Consequently, the FDIC, through its regulations, has interpreted 12 U.S.C. § 1821(e)(3)(A) to mean that claims for golden parachute benefits after the receiver's appointment and disaffirmance of a contract are not recoverable.

Defendant, relying on its interpretation of 12 U.S.C. § 1821(e), found that Plaintiff failed to state a provable claim for her golden parachute severance payment. See Dkt. No. 15-6 (denying Plaintiff's claim because the "Proof of Claim fail[ed] to state a provable claim against the FDIC as the Receiver for [the] Bank under the provisions of 12 U.S.C. 1821(e)(3) and 12 CFR 359.7 since [Plaintiff's] rights to Termination Benefits of her Employment Agreement were contingent at the time of . . . the appointment of the FDIC as receiver"). This Court gives significant deference to an agency's interpretation and

19

application of an ambiguous statute[6] that the agency is entrusted

to administer.  See Chevron, U.S.A., Inc. v. Natural Res. Def.

Council, Inc., 467 U.S. 837, 844 (1984) (recognizing that

"considerable weight should be accorded to an executive

department's construction of a statutory scheme it is entrusted

to administer, and the principle of deference to administrative

interpretations" (internal footnotes omitted)); Thomas Jefferson

Univ. v. Shalala, 512 U.S. 504, 512 (1994) (agency's

interpretation of its own regulations must be given "substantial

deference" and is to be disregarded only if "it is plainly

erroneous or inconsistent with the regulation" (citation and

quotation marks omitted)); Friends of Everglades v. S. Fla.

Water Mgmt. Dist., 570 F.3d 1210, 1219 (11th Cir. 2009) ("[T]he

[agency's] regulation is entitled to Chevron deference if it is

a reasonable construction of an ambiguous statute.").  The

FDIC's interpretation "is based on a permissible construction of

the statute."  Chevron, 467 U.S. at 843.  Consequently, the

---

[6] At least with regard to reduction-in-force agreements, a Circuit split
exists regarding the meaning of the phrase "limited to actual direct
compensatory damages."  See McMillian, 81 F.3d at 1053-54 (discussing
reasoning of First, Third, Ninth, and DC Circuits).  The Court finds no
reason to consider the phrase ambiguous only for the purposes of
nondiscriminatory reduction-in-force analyses.  Therefore, this Court treats
the phrase as ambiguous for the purposes of its Chevron analysis.

AO 72A
(Rev. 8/82)

Court defers to the FDIC's interpretation and finds that Plaintiff is not entitled to the severance payment.

Plaintiff argues that this Court should ignore the agency's interpretation and resolve this case based upon the Eleventh Circuit's holding in McMillian v. FDIC, 81 F.3d 1041 (11th Cir. 1996). See Dkt. No. 42. Plaintiff makes several arguments related to the McMillian decision.

First, Plaintiff argues that McMillian supersedes the FDIC's regulations because McMillian was decided more than two (2) months after the FDIC adopted 12 C.F.R. § 359. See id. at 3. This argument overlooks, however, the fact that the court in McMillian was not addressing a possible golden parachute payment. The plaintiff in McMillian sought severance benefits pursuant to a company-wide reduction-in-force ("RIF") pay plan. McMillian, 81 F.3d at 1044. That RIF plan was a "nondiscriminatory benefit plan." As such, it was not a golden parachute payment. See 12 U.S.C. § 1828(k)(4)(C)(i); see also 12 C.F.R. § 359.1(f)(2)(v) ("Any payment made pursuant to a nondiscriminatory severance pay plan or arrangement which provides for payment of severance benefits to all eligible employees upon involuntary termination other than for cause . . ." is not a golden parachute payment. (emphasis added)).

21

Consequently, the McMillian court was not analyzing a fact-pattern similar to the one before this Court. Therefore, it did not need to rely upon the regulations at issue here.

Second, Plaintiff argues that, notwithstanding 12 C.F.R. § 359.7, she seeks "actual direct compensable damages" under 12 U.S.C. § 1821(e)(3). Dkt. No. 42, at 3-4. Plaintiff cites case law, including McMillian, in support of her position. However, Plaintiff fails to note that the cited cases do not rely upon either 12 U.S.C. § 1828 or its associated regulations.[7] The regulation applicable to the case before this Court states that the payment sought is not a claim for "actual, direct compensatory damage[s]" against the receiver. 12 C.F.R. § 359.7. Because Plaintiff does not seek "actual direct compensatory damages," the FDIC is not liable for damages resulting from its repudiation of Plaintiff's Employment Agreement. See 12 U.S.C. § 1821(e)(3)(A).

Third, Plaintiff argues that 12 C.F.R. § 359.7 is inapplicable because McMillian establishes that "claims for

_____

[7] In fact, the McMillian court noted that § 1828 distinguishes between parachute payments and other payments, such as nondiscriminatory benefit plans. See McMillian, 81 F.3d at 1055-56. Through this dictum, the court clarified that "actual direct compensatory damages" differ depending upon the nature of the payment sought. See id.

22

severance pay are not contingent when the FDIC is appointed receiver." Dkt. No. 42, at 4. This is not the actual holding in McMillian. See McMillian, 81 F.3d at 1050 ("[A]t the time the FDIC was appointed receiver, [the plaintiff] was party to a contract with [the insolvent bank] which entitled him to severance pay. This right was contingent, of course, on his discharge as a result of a 'Reduction in Force.'"); see also id. ("The employees had a right to severance pay as of the date of the appointment—albeit a contingent one—and that right should be treated essentially the same as the right to accrued vacation pay or health benefits." (quoting Office & Prof'l Employees Int'l Union, Local 2 v. FDIC, 27 F.3d 598, 601 (D.C. Cir. 1994))). An accurate reading of McMillian confirms that— notwithstanding the FDIC's appointment as receiver—Plaintiff's severance pay was contingent upon her discharge.

Finally, Plaintiff argues that "the FDIC's reading of 12 C.F.R. § 359.7 would lead to a rule that no severance agreement is ever payable in the event of receivership." Dkt. No. 42, at 4. Plaintiff states that such a reading of the statute and regulation "would render the entire golden parachute statute superfluous." Id. (citing McMillian, 81 F.3d at 1056). This is not correct. Part 359 has limited scope. It relates to an

23

insured depository institutions' ability "to enter into contracts to pay and to make golden parachute . . . payments to institution-affiliated parties (IAPs)."[8]  12 C.F.R. § 359.0. Thus, for example, the regulation would not apply to company-wide RIF plans such as the plan at issue in McMillian. Consequently, the FDIC's interpretation of the relevant statutes and its own regulations is consistent with Congress's intention to permit some severance benefits while restricting others.

## IV.  CONCLUSION

For the multiple reasons stated above, the Court concludes that Plaintiff seeks payment pursuant to a golden parachute agreement.  The Court further concludes that Defendant's repudiation of Plaintiff's Employment Agreement did not result in "actual direct compensatory damages."  Consequently, Plaintiff's Motion for Summary Judgment is **DENIED**.  Dkt. No. 20. Defendant's Motion for Summary Judgment is **GRANTED**.  Dkt. No. 19.  The Clerk of Court is directed to close the case and enter a final judgment.

---

[8] Plaintiff was an IAP because she was a director and officer of the Bank. See supra note 3.  See also 12 C.F.R. § 359.1 ("Institution-affiliated party (IAP) means: (1) Any director, officer, [or] employee, . . . of, or agent for, an insured depository institution . . . .").

24

AO 72A
(Rev. 8/82)

**SO ORDERED**, this 7th day of March, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)